**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 3:15-cr-104 |
| | : | |
| vs. | : | Judge Timothy S. Black |
| | : | |
| FESUM OGBAZION, | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING**
**DEFENDANT'S MOTION TO DISMISS**
**THE SUPERSEDING INDICTMENT**

This criminal case is before the Court on Defendant Fesum Ogbazion's motion to dismiss the superseding indictment (Doc. 84) and the parties' responsive memoranda (Docs. 85, 86).

## I. BACKGROUND

Defendant formerly owned and operated ITS Financial, LLC ("ITS Financial"). (Doc. 6 at ¶ 3). ITS Financial was headquartered in Dayton, Ohio, and was the national franchisor of Instant Tax Service ("ITS"), a nationwide tax preparation franchise business started by Defendant in 2004 and marketed by ITS Financial throughout the United States. (*Id.*) ITS was purported to be the fourth largest tax preparation company in the United States.

Defendant was also the founder and sole-owner of TCA Financial, LLC ("TCA"), which served as the holding company for ITS Financial. (Doc. 6 at ¶ 4). Defendant was also the founder and sole-owner of Tax Tree, LLC ("Tax Tree"), an entity formed in 2010 to raise capital from private investors in order to fund ITS loan products, including

Instant Cash Loans ("ICL") and Refund Anticipation Loans ("RAL"), which were marketed nationwide to ITS customers. (*Id*. at ¶¶ 5, 21). Tax Tree also served as a clearinghouse for tax refunds issued by the Internal Revenue Service ("IRS"). (Doc. 45 at 6). Defendant was also the sole-owner and operator of TaxMate, LLC ("TaxMate"). (Doc. 6 at ¶ 6).

In November 2011, Defendant learned that the IRS's civil division was investigating ITS and its affiliated companies. (Doc. 45 at 6). Defendant cooperated in the investigation, appearing for several interviews and depositions, as well as providing requested documents to assist the IRS attorneys and agents. (*Id*. at 8-14). On March 28, 2012, Defendant Ogbazion, along with ITS Financial, TCA, and Tax Tree (collectively, the "Civil Defendants"), were named in a civil enforcement action brought by the Department of Justice ("DOJ") Tax Division, on behalf of the United States, pursuant to 26 U.S.C. §§ 7402 and 7408 of the Internal Revenue Code. *United States v. Fesum Ogbazion, et al.*, No. 3:12-cv-0095 (S.D. Ohio, Mar. 28, 2012).[1]

In the civil action, the Government sought to permanently enjoin the Civil Defendants "from preparing or directing or assisting in the preparation of federal tax returns, from engaging in and facilitating tax fraud, and from engaging in any other conduct that substantially interferes with the administration or enforcement of the tax laws, including the conduct described in this complaint." (Civil Doc. 1 at ¶ 11). On June 17, 2013, the civil case proceeded to a ten-day bench trial before this Court. (Civil Doc. 98).

---

[1] For purposes of clarity, citations to the civil case docket will be identified as "Civil Doc.__".

Ultimately, on November 6, 2013, a civil judgment was entered in favor of the Government (Civil Doc. 142) and an Order of Permanent Injunction was issued against the Civil Defendants (Civil Doc. 143). On November 21, 2014, the Sixth Circuit affirmed this Court's injunction on appeal, and a mandate was issued on January 13, 2015. (Civil Doc. 156). Several months later, and approximately one and a half years after the civil action was fully resolved in the district court, the Government commenced the instant criminal case. (Doc. 6).

Specifically, on August 25, 2015, Defendant Ogbazion, along with co-defendant Kyle Wade, were charged in a twenty-three count Indictment with: engaging in a corrupt endeavor to obstruct and impede the due administration of the Internal Revenue Code, in violation of 26 U.S.C. § 7212(a) (Count 1); conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 2); wire fraud, in violation of 18 U.S.C. § 1343 (Counts 3-7); money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(ii) (Counts 8-13); bank fraud, in violation of 18 U.S.C. § 1344 (Count 14); tax evasion, in violation of 26 U.S.C. § 7201 (Count 15); and failure to collect and pay over payroll tax, in violation of 26 U.S.C. § 7202 (Counts 16-23). (Doc. 6).[2]

On February 9, 2016, Defendant filed a motion to dismiss the Indictment. (Doc. 45). Specifically, Defendant argued that the Indictment should be dismissed, in whole or in part, or alternatively, that certain evidence should be suppressed, because: (1) the Government abused parallel civil proceedings to prosecute Defendant in this criminal

---

[2] Both Defendants Ogbazion and Wade were charged in Counts 1 through 7 of the Indictment. (Doc. 6 at ¶¶ 27-54). The remaining counts, however, were brought against Defendant Ogbazion only. (*Id*. at ¶¶ 55-86).

case; (2) Counts 16 and 20, as well as parts of Counts 1 and 15, are barred by the applicable statutes of limitations; and (3) the Indictment fails to state an offense as to Count 1, as well as Counts 8 through 13. (*Id*. at 1). On October 17, 2016, this Court issued an Order only granting Defendant's motion as to the dismissal of Count 1, finding that "the Indictment fail[ed] to set forth an element of the 26 U.S.C. § 7212(a) omnibus clause offense, [and was therefore] legally deficient and must be dismissed." (Doc. 66 at 40). Defendant's motion was denied in all other respects. (*Id*. at 43).

On November 14, 2016, the Government filed a notice of interlocutory appeal as to the Court's dismissal of Count 1. (Doc. 70); *United States v. Fesum Ogbazion*, No. 16-4298 (6th Cir. 2016). During a status conference on November 21, 2016, the Government clarified that its Notice of Appeal was filed protectively, and that Department of Justice ("DOJ") officials were still considering whether the appeal may proceed. (Min. Entry & Not. Order, Nov. 21, 2016).[3] A determination in that regard was anticipated by January 2017. (*Id*.)

However, the DOJ's appellate review process ultimately took longer than anticipated. On December 22, 2016, the Government filed, in the Court of Appeals, an unopposed motion for a thirty-day extension of time, until February 2, 2017, to file its opening brief. (App. Doc. 12). The Court of Appeals granted the motion. (App. Doc. 13). On January 24, 2017, the Government moved for an additional extension until March 3, 2017 to file its opening brief. (App. Doc. 14). This time, Defendant opposed the motion, arguing that "further delay of [the interlocutory appeal] creates a very murky

---

[3] For purposes of this Order, documents in the appellate case will be cited as "App. Doc. __".

picture that prejudices [Defendant's] ability to adequately defend himself in the underlying case …." (App. Doc. 15 at 4). Regardless, the Court of Appeals granted the Government's second motion for an extension of time. (App. Doc. 16). However, the Government learned shortly thereafter that the Solicitor General had elected not to pursue the appeal. (Doc. 85 at 13). Accordingly, on February 3, 2017, the Government filed a motion to voluntarily dismiss the appeal (App. Doc. 17), which the Court of Appeals granted (App. Doc. 18).

Notably, on January 24, 2017 (*i.e.*, shortly before dismissal of the appeal), the Government filed a thirty-one count Superseding Indictment in the criminal case. (Doc. 82).[4] Specifically, the Superseding Indictment includes Counts 2 through 23 of the initial indictment, but also adds the following charges as to both Defendants Ogbazion and Wade: conspiracy to defraud the United States and to commit wire fraud, in violation of 18 U.S.C. § 371 (Count 24); and wire fraud, in violation of 18 U.S.C. § 1343 (Counts 25-32). As to the conspiracy charge (Count 24), the Government alleges that from January 1, 2004 through November 6, 2013, Defendant engaged in a multi-object conspiracy involving: (1) defrauding the United States by impeding, impairing, obstructing and defeating the lawful government functions of the IRS; and (2) devising a scheme and artifice to defraud ITS customers, by means of false and fraudulent pretenses, using wire communications in interstate and foreign commerce. (Doc. 82 at ¶ 84). As to the wire fraud charges (Counts 25-32), the Government alleges that from January 24, 2012

---

[4] The Superseding Indictment commences with Count 2 and ends with Count 32, thereby reflecting the dismissal of Count 1.

through November 6, 2013, Defendant devised a scheme and artifice to defraud and to obtain increased income tax return preparation fees from ITS customers, using wire communications in interstate and foreign commerce. (*Id*. at ¶ 122).

On February 17, 2017, Defendant filed the motion to dismiss the superseding indictment, currently at issue before the Court. (Doc. 84). The motion has been fully briefed and is now ripe for decision.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Crim. P. 12(b)(1), "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." A defendant may bring a motion to dismiss under Rule 12 in order to assert, *inter alia*, defects in instituting the prosecution or a defect in the indictment. *Id*. If the Court finds that "the indictment is legally deficient, the proper result is dismissal of the indictment." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001). Alternatively, the Court may "order[] the Government to submit a bill of particulars to supplement the allegations in the indictment …." *United States v. Jones*, 542 F.2d 661, 666 (6th Cir. 1976).

The Court "may ordinarily make preliminary findings of fact necessary to decide questions of law … so long as the trial court's conclusions do not invade the province of the ultimate factfinder." *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997). However, "courts evaluating motions to dismiss do not evaluate the evidence upon which the indictment is based." *Landham*, 251 F.3d at 1080.

# III.  ANALYSIS

Defendant argues that the Court should exercise its supervisory power to dismiss the Superseding Indictment in its entirety, with prejudice, based on the Government's alleged misconduct and vindictive prosecution.  (Doc. 84 at 19-28).  Alternatively, Defendant argues that certain counts of the Superseding Indictment are legally deficient and should be dismissed.  (*Id*. at 28-38).

## A.  Dismissal of the Superseding Indictment in its Entirety

Defendant asserts that the Government has run afoul of his constitutional rights— namely his right to due process—by responding vindictively to the Court's dismissal of Count 1.  (Doc. 84 at 19-28).  Therefore, Defendant urges the Court to exercise its supervisory power to dismiss the Superseding Indictment, in its entirety, for vindictive prosecution.  (*Id*.)

"[D]ue process prohibits an individual from being punished for exercising a protected statutory or constitutional right."  *United States v. Poole*, 407 F.3d 767, 774 (6th Cir. 2005) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)).  However, "the Due Process Clause is not offended by all possibilities of increased punishment …., but only by those that pose a realistic likelihood of 'vindictiveness.'"  *Blackledge v. Perry*, 417 U.S. 21, 27 (1974).

Thus, "[a] defendant alleging prosecutorial vindictiveness must show either 'actual vindictiveness' or a 'realistic likelihood of vindictiveness.'"  *United States v. Roach*, 502 F.3d 425, 443 (6th Cir. 2007) (quoting *United States v. Dupree*, 323 F.3d 480, 489 (6th Cir. 2003)).  "Actual vindictiveness is demonstrated by 'objective evidence that a

prosecutor acted in order to punish the defendant for standing on his legal rights.'" *Id.* (quoting *Dupree*, 323 F.3d at 489). Conversely, to show a 'realistic likelihood of vindictiveness,' the defendant must show: "(1) exercise of a protected right; (2) the prosecutor's 'stake' in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and, presumably, (4) that the prosecution was initiated with the intent to punish the [defendant] for the exercise of the protected right." *Dupree*, 323 F.3d at 489.

If the defendant shows that "'the prosecutor has some stake in deterring the [defendant's] exercise of his rights and [that] the prosecutor's conduct was somehow unreasonable,' then the district court may find that there is a 'reasonable likelihood of vindictiveness' and may presume an improper vindictive motive." *United States v. LaDeau*, 734 F.3d 561, 566 (6th Cir. 2013) (quoting *Bragan v. Poindexter*, 249 F.3d 476, 482 (6th Cir.2001)) (emphasis added). "The government bears the burden of rebutting the presumption with 'objective, on-the-record explanations' such as 'governmental discovery of previously unknown evidence' or 'previous legal impossibility.'" *Id*. (quoting *Bragan*, 249 F.3d at 482).

Here, Defendant argues that the Government's conduct in this case amounts to vindictive prosecution, as evidenced by the Government's revival of the charge dismissed in Count 1, under a different count and statute, and the enhanced penalties associated with the additional charges brought in the Superseding Indictment. (Doc. 84 at 19-28). Additionally, Defendant alleges that he has been substantially prejudiced by the

deprivation of trial preparation time, caused by the delay during the Government's (now abandoned) interlocutory appeal. (*Id.*)

However, the Court finds that Defendant has not shown the Superseding Indictment to be a product of prosecutorial vindictiveness. Critically, as set forth below, the Court cannot conclude that the Government acted unreasonably or that the additional charges and enhanced penalties were intended to punish Defendant.

Regardless, the issue of prejudice, while insufficient to warrant dismissal of the Superseding Indictment, raises other concerns that this Court must address.

### 1. Reasonableness of the Government's Response

Defendant alleges that the Superseding Indictment is the Government's vindictive response to the Court's prior dismissal of Count 1. Defendant argues that:

> The Superseding Indictment … repackages and re-labels Count 1 of the Original Indictment (the "guts" of the government's case against [Defendant], previously dismissed by the Court) and re-charges it as Count 24. Indeed, save a few minor tweaks (all of which vindictively expand the extent of [Defendant's] potential criminal liability), Count 24 of the Superseding Indictment is a literal cut-and-paste of the dismissed Count 1 of the Original Indictment.
> …
> Frustrated by the Court's dismissal of the "guts" of its criminal case against [Defendant] (Count 1 of the Original Indictment) and unable to secure even internal approval to challenge such dismissal by way of proper appeal, the government simply decided to take matters into its own hands and effect a naked end-run of the Court's prior order. Quite literally, the government in the Superseding Indictment purports to re-plead criminal charges previously dismissed by this Court (and from which no appeal was ultimately taken).

(Doc. 84 at 11).  The Court fully agrees that Count 24 is—and was undoubtedly intended to be—a revival of Count 1.  However, the Court finds nothing unreasonable about the Government's charging decision.

To be clear, the Court previously dismissed Count 1 in the Indictment, finding that the Indictment failed to sufficiently allege each of the essential elements (recognized in the Sixth Circuit) of the 26 U.S.C. § 7212(a) offense and was therefore legally deficient. (Doc. 66 at 33-40).  The Court further stated that "[s]uch deficiencies cannot be remedied by amending the indictment or ordering the Government to provide a bill of particulars." (*Id.* at 33).

Relying heavily on the Court's statement, Defendant now argues that Count 24 of the Superseding Indictment is an impermissible amendment of Count 1, in violation of the Court's instruction.  However, Defendant's argument misconstrues the Court's admonition regarding amendments.

"[I]ndictments 'may not be amended because doing so would substitute the prosecutor's judgment for that of the constitutional body, the Grand Jury, in framing the charge against a defendant.'"  *United States v. Prince*, 214 F.3d 740, 756 (6th Cir. 2000) (internal quotation marks and citations omitted).  Thus, an indictment may be amended only by the Grand Jury, unless "'the change is merely a matter of form' … [such as] corrections of clerical or typographical errors."  *United States v. Rosenbaum*, 628 F.

App'x 923, 929 (6th Cir. 2015) (quoting *Russell v. United States*, 369 U.S. 749, 770 (1962)). [5]

As the Court made clear in its prior Order, an indictment must set forth each of the elements of the offense charged, *not only* to provide adequate notice to Defendant, *but also* to ensure that Defendant is only answering to charges properly returned by the Grand Jury. (Doc. 66 at 39-40). And, as to Count 1, the Court found that "the Indictment [was] devoid of any indication that either the Government or the Grand Jury was even aware that a charge under 26 U.S.C. § 7212(a)'s omnibus clause requires the defendant to have been aware of a pending IRS action." (*Id.* at 40). Thus, in stating that the Government could not simply amend the Indictment to correct the deficiency, the Court was emphasizing that the error was not "merely a matter of form," and therefore could not be remedied by the prosecutor's clarifications. (*Id.*) As the Court stated, "the Government's 'he knows what we meant' argument does not satisfy the requirement that the indictment clearly set forth all elements of the offense charged." (*Id.*) However, nothing in the Court's Order was intended to imply that the Government could not correct its error by obtaining a superseding indictment <u>from the Grand Jury</u>.

The Court finds that the Government's decision to charge Count 24 was a reasonable and permissible response, in light of the dismissal of Count 1. Indeed, as

---

[5] Among "[t]he purposes underlying the rule against amendments and constructive amendments include notice to the defendant of the charges he will face at trial … [and] **of 'paramount importance,'** the assurance that a group of citizens independent of prosecutors or law enforcement officials have reviewed the allegations and determined that the case is worthy of being presented to a jury for a determination of the defendant's guilt or innocence." *United States v. Beeler*, 587 F.2d 340, 342 (1978) (quoting *United States v. Radetsky*, 535 F.2d 556, 562 (10th Cir. 1976)) (emphasis added).

Defendant notes, and as the Government would likely agree, Count 1 constituted the 'guts' of the prosecution's case. The Court sees nothing unreasonable about, and is certainly not offended by, the Government's attempt to remedy its own error.

As the Government's decision here was not unreasonable, the Court declines to presume that the Government acted vindictively in its decision to charge Count 24.

### 2. Punishment for Exercising a Constitutionally Protected Right

Additionally, Defendant argues that the Government is attempting to punish him for exercising a protected right, evidenced by the additional charges and enhanced penalties under the Superseding Indictment.

The Government responds that the additional charges "are based on evidence newly acquired since presentment of the initial Indictment, some of which pre-dates the Court's dismissal of Count One." (Doc. 85 at 11).

> Particularly, evidence obtained in or about October 2016 during a related criminal trial in the Western District of Missouri, *United States v. Semere Tsehaye*, 4:16cr69- CDP. *See Exhibit A – Judgement Order*. Tsehaye was convicted on two counts of tax evasion, in violation of 26 U.S.C. § 7201, relating to his failure to report and pay federal income taxes on income earned, in large part, from his operation of ITS franchises in St. Louis and Kansas City in 2010 and 2011. During the Tsehaye trial, ITS's former comptroller, Peter Samborsky testified under a grant of statutory immunity pursuant to 18 U.S.C. § 6001 et seq. On September 27, 2016 the Court in Tsehaye entered an Order compelling Samborsky to testify. *See Exhibit B*. As part of Samborsky's Compulsion Order, the Government interviewed Samborsky on October 25, 2016 and again on January 12, 2017. *See Exhibits C and D*. It was during these interviews that the Government first identified the specific financial institutions Defendant used to receive and disburse ITS's tax return preparation fees in 2012 and 2013 – which in turn form the

> basis of Counts Twenty-Five through Thirty-Two, and a
> significant part of Count Twenty-Four, of the Superseding
> Indictment returned on January 24, 2017.

(*Id.* at 3-4). Additionally, the Government argues that it "was actively pursuing this [new] evidence prior to the Court's dismissal of Count One, and is <u>likely to have brought the[] [additional] charges regardless of how the Court ruled on Defendant's First motion to Dismiss</u>." (*Id.* at 11) (emphasis added).

In Defendant's reply, he argues that the "newly acquired" evidence was actually known by, or at the very least, was readily available to the Government at the time of the first Indictment. (Doc. 86 at 8). Specifically, Defendant asserts that, "the government's assertion that it only recently learned of the specific financial institutions used by the Defendant and his businesses is patently false," and that the information has been within the Government's possession since February 2012. (*Id.*). Thus, Defendant argues that the Government's decision to expand the scope of the charges and potential penalties, only after Defendant sought and was granted partial relief from the initial Indictment, was unreasonable. (*Id.*)

Notably, a presumption of vindictiveness <u>first</u> requires unreasonable conduct by the Government. *LaDeau*, 734 F.3d at 566. As the Court previously concluded, the Government did not act unreasonably by seeking the Superseding Indictment in order to salvage the 'guts' of its case. Moreover, the fact that, in doing so, the Government also pursued additional, related charges is not, in and of itself, evidence that the Government acted unreasonably or intended to punish Defendant. *See Goodwin*, 457 U.S. at 379 ("An

initial indictment … does not necessarily define the extent of the legitimate interest in prosecution").

With regard to Count 24, the Government cannot be faulted for the fact that the charge they were led to pursue poses a lesser evidentiary hurdle, but a higher statutory penalty, than Count 1, which this Court dismissed. And, as to Counts 25-32, the fact the prosecution may have had ready access to <u>some</u> of the evidence at the time of the initial Indictment does not necessarily mean that the Government had enough compelling evidence, as to each of the elements of the offense, to justify bringing the additional charges from the start.

The Government represents to this Court that it did not have the evidence necessary to pursue the new charges until only recently, and that it would have pursued the new charges regardless of the outcome of Defendant's first motion to dismiss. (Doc. 85 at 11). Further, the Government points to various sources of evidence that were either unavailable or, at the very least, less reliable until just a few months ago. (*See id.* at 3-4). Based upon the record before it, this Court finds no basis to conclude that the Government should have brought the charges under the initial Indictment, nor that the Government's recent decision to do so was prompted by vindictiveness.

Having found that the Government's charging decisions in the Superseding Indictment were not unreasonable, nor fueled by vindictiveness in response to the exercise of Defendant's statutory and constitutional rights, the Court finds that dismissal of the Superseding Indictment, based upon vindictive prosecution, is unwarranted.

### 3. *Prejudice*

Defendant repeatedly asserts in his motion and reply that the delay during the Government's interlocutory appeal has severely deprived him of adequate time to prepare for trial, not only as to the original counts reasserted in the Superseding Indictment, but also on the additional charges.  (Doc. 84 at 10, 13-14, 16, and 23; Doc. 86 at 2, 4-5). Defendant argues that, "[t]he bottom line is that the Defendant has clearly been prejudiced by the delay because he lost nearly four months of time during which he would have been preparing to defend against the allegations in Count 1 of the Original Indictment (now Count 24 of the Superseding Indictment)."  (Doc. 86 at 5).  Moreover, Defendant asserts that "[c]ontinuing the current trial date (May 15, 2017) to give the Defendant more time to prepare is not an option, if for no other reason tha[n] to do so would have Speedy Trial implications."  (Doc. 86 at 5, n.1) (emphasis added).

The Court agrees that the delay resulting from the Government's interlocutory appeal was significant.  However, the fact of the matter is that the delay during the interlocutory appeal does not warrant dismissal of the Superseding Indictment.[6]  But Defendant's statements regarding prejudice could raise serious Fifth and Sixth Amendment implications.

In truth, it is likely that Defendant's assertions of prejudice were intended merely to bolster his request for dismissal, and not for purposes of obtaining a continuance. Indeed, to have argued otherwise would have undermined Defendant's position that

---

[6] Defendant notes that prejudice is not an element of prosecutorial vindictiveness.  (Doc. 86 at 9, n.8).

dismissal is the only option. Regardless, the statements have placed this Court in a difficult position, and a continuance may be the best approach. In that regard, Defendant is incorrect in stating that the requirements of the Speedy Trial Act would preclude a continuance. The Court can toll time upon finding that the ends of justice served by continuing the trial outweigh the interests of Defendant and the public in a speedy trial. Based upon Defendant's assertions, this Court would consider making such a finding, assuming that Defendant maintains his position that the remaining preparation time before trial is inadequate.

Accordingly, the Court orders defense counsel to consider whether a continuance of the trial date is indeed necessary to ensure adequate time to prepare for trial, and Defendant shall file, no later than April 14, 2017, either: (1) a motion expressly seeking a continuance of the trial date (of no more than twelve-weeks); or (2) notice that the defense can and will be prepared to proceed to trial as scheduled (which notice shall be signed by Defendant as well).

**B. Dismissal of Certain Counts**

In the alternative, Defendant argues for dismissal of certain counts in the Superseding Indictment. (Doc. 84 at 28-38). Specifically, Defendant argues that: (1) Count 2 should be dismissed because the allegations lack the required specificity; (2) Counts 3 through 7 and 25 through 32 should be dismissed because the indictment fails to state a wire fraud offense and the allegations lack the required specificity; (3) Count 14 should be dismissed because it is duplicitous; and (4) Count 24 should be dismissed because it is untimely filed pursuant to the statute of limitations. (*Id.*)

### 1. *Dismissal of Count 2*

Defendant alleges that Count 2 of the Superseding Indictment, which charges

Defendant with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Doc.

82 at ¶¶ 27-46), lacks the requisite specificity and must be dismissed (Doc. 84 at 28-30).

      Pursuant to Fed. R. Crim. P. 7(c)(1), "[t]he indictment or information must be a

plain, concise, and definite written statement of the essential facts constituting the offense

charged …."  An indictment is constitutionally sufficient if it: (1) "contains the elements

of the offense charged and fairly informs a defendant of the charge against which he must

defend"; and (2) "enables him to plead an acquittal or conviction in bar of future

prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108

(2007) (citing *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

Moreover, it will usually suffice for an indictment to "state[] the offense using the

words of the statute itself, as long as the statute fully and unambiguously states all the

elements of the offense." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173,

176 (6th Cir. 1992) (citing *Hamling*, 418 U.S. at 117).  "However, the recitation of

statutory language 'must be accompanied with such a statement of the facts and

circumstances as will inform the accused of the specific offense, coming under the

general description with which he is charged.'" *United States v. McAuliffe*, 490 F.3d 526,

531 (6th Cir. 2007) (quoting *Superior Growers*, 982 F.2d at 176) (internal quotation

marks omitted).

Yet, "[w]hen the indictment charges a conspiracy:  [i]t is well settled that an

indictment for conspiring to commit an offense—in which the conspiracy is the gist of

the crime—<u>it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy</u>." *Superior Growers*, 982 F.2d at 176 (citing *United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir.1985)) (emphasis added). "To establish conspiracy to commit wire fraud under 18 U.S.C. § 1349, the government must demonstrate that 'two or more persons conspired, or agreed, to commit the crime of [wire fraud] and that the defendant knowingly and voluntarily joined the conspiracy.'" *United States v. Harrison*, 663 F.App'x 460, 464 (6th Cir. 2016) (quoting *United States v. Rogers*, 769 F.3d 372, 377 (6th Cir. 2014)). Unlike a conspiracy charged under 18 U.S.C. § 371, a conspiracy under 18 U.S.C. § 1349 does not require proof of an overt act. *Rogers*, 769 F.3d at 380-82.[7]

Count 2 alleges as follows:

> Beginning in or about December 2009, and continuing up to and including on or about November 1, 2012, in the Southern District of Ohio and elsewhere, Defendants FESUM OGBAZION and KYLE WADE, and other persons known and unknown to the Grand Jury, intentionally, unlawfully, and knowingly did combine, conspire, confederate and agree between and among themselves to devise a scheme and artifice to defraud and obtain funds by means of false and fraudulent pretenses through the electronic transmission by wire of writings, signs, signals, pictures and sounds in tersate and foreign commerce, in violation of 18 U.S.C. § 1343.
> …
> It was the object of this conspiracy for Defendants OGBAZION and WADE to generate loan fees for ITS and its franchises by luring customers into ITS franchises through false and fraudulent means, to wit: advertising that ITS could offer customers loans in advance of their expected federal income tax refunds, knowing full well that in 2010 and 2011

---

[7] The conspiracy in Count 2 is charged under 18 U.S.C. § 1349, while the conspiracy in Count 24 is charged under 18 U.S.C. § 371.

> ITS did not have a relationship with an independent lender
> that could provide funding for the loans advertised.

(Doc. 82 at ¶¶ 28-29).[8] Count 2 then provides sixteen paragraphs setting forth the "[m]anner and [m]eans" of the conspiracy, including "Filing Income Tax Returns Without Customer Authorization" and "Loan Fraud." (*Id*. at ¶¶ 30-46).

Specifically, the Superseding Indictment alleges that, as part of the conspiracy and scheme to defraud, Defendants "purposely targeted low-income and unsophisticated taxpayers, who needed cash quickly …." (*Id*. at ¶ 30). Defendants allegedly "used false and deceptive advertising for [ITS's] ICL and RAL lending products to lure customers into [ITS's] local stores in order to obtain [the customers'] personal and confidential identifying information for the purpose of using this information to prepare and file income tax returns in those customers' names." (*Id*. at ¶ 33). Thus, the Government alleges that, having lured customers to ITS by way of the false advertisements, and having obtained the customers' personal and confidential identifying information under false pretenses, Defendants "prepared and electronically filed with the IRS, in interstate commerce, Forms 1040, 1040A, or 1040EZ for customers without their authorization, without accurate and truthful IRS Forms 8879 signed by customers, and without first obtained customers' employer issued Forms W-2." (*Id*. at ¶ 31). The Superseding Indictment continues with ten paragraphs detailing the alleged "loan fraud," which, in

_____

[8] The loan products advertised included Instant Cash Loans ("ICL") and Refund Anticipation Loans ("RAL"). (Doc. 82 at ¶ 21). ICLs and RALs are "loans to taxpayers based on taxpayers' expected income tax refunds." (*Id*.) An ICL is offered to taxpayers *before* the tax filing season, based on a preliminary, or estimated, tax return. (*Id*. at ¶ 22). An RAL is applied for *after* the start of the tax filing season and is based on the taxpayers' actual income tax return. (*Id*. at ¶ 26).

short, involved charging customers fees for services that ITS promised, but could not deliver, and then deducting those fees from customers' income tax refunds. (*Id*. at ¶¶ 37-46).

Defendant argues that "[c]ompletely absent [from Count 2] is any specificity regarding the actual object of the conspiracy – the allegedly false advertising." (Doc. 84 at 30). Specifically, Defendant asserts that the allegations are deficient, as they do not offer "the specific dates on which the allegedly false advertising ran … [and the] specific statements contained in the advertising [which] were false." (*Id*.)

Defendant's argument fails, because the offense of <u>conspiracy</u> to commit wire fraud, charged under Count 2, does not need to "allege with technical precision all the elements essential to … the object of the conspiracy [(*i.e.*, wire fraud)]." *Superior Growers*, 982 F.2d at 176. Rather, the charge must detail the conspiracy. And here, the Superseding Indictment adequately alleges that Defendants Ogbazion and Wade knowingly conspired and agreed to commit the offense of wire fraud. (Doc. 82 at ¶ 28). The Superseding Indictment further specifies the timeframe of the conspiracy, the objective of the scheme, and the manner and means by which the scheme was accomplished.

The Court finds that Count 2 contains each of the essential elements of the 18 U.S.C. § 1349 conspiracy offense, that the Superseding Indictment is legally sufficient to give Defendant notice of the charge against him, and that the allegations are sufficiently specific to allow Defendant to plead double-jeopardy should he ever face the same charge, based on the same facts. Accordingly, dismissal of Count 2 is denied.

### 2. *Dismissal of Counts 3-7 and 25-32*

Next, Defendant argues that Counts 3 through 7, as well as Counts 25 through 32 should be dismissed because "[t]he Superseding Indictment fails to state all of the elements of a wire fraud offense and lacks the constitutionally required specificity." (Doc. 84 at 30, 37).

The offense of wire fraud, under 18 U.S.C. § 1343, requires proof of three elements: (1) "the defendant devised or willfully participated in a scheme to defraud"; (2) the defendant "used or caused to be used an interstate wire communication 'in furtherance of the scheme'"; and (3) the defendant "intended 'to deprive a victim of money or property.'" *United States v. Faulkenberry*, 614 F.3d 573, 581 (6th Cir. 2010) (quoting *Prince*, 214 F.3d at 748).

### a. <u>Counts 3-7</u>

#### i. *Failure to State a Wire Fraud Offense*

First, Defendant argues that Counts 3 through 7 fail to include allegations as to materiality, and that "[m]ateriality of the alleged falsehood is a required element of wire fraud." (Doc. 84 at 31-32). Thus, Defendant argues that, "[a]bsent allegations as to the materiality of the alleged falsehoods or concealments, Counts 3 through 7 fail to state a wire fraud offense and must therefore be dismissed." (*Id*. at 32).

Defendant is correct, to a degree, in stating that materiality is an element of wire fraud. More accurately, however, <u>materiality is an element of the "scheme or artifice to defraud</u>," which is criminalized under the wire fraud statute, 18 U.S.C. § 1343. *See Neder v. United States*, 527 U.S. 1, 20 (1999) (stating "[t]he Court of Appeals concluded

that the failure to submit materiality to the jury was not error because the fraud statutes do not require that a 'scheme to defraud' employ material falsehoods.  **We disagree**") (emphasis added).  The Supreme Court in *Neder* acknowledged that the plain language of the federal mail, bank, and wire fraud statutes does not provide for a separate element of materiality, but held that "actionable 'fraud' ha[s] a well-settled meaning at common law … [and] the well-settled meaning of 'fraud' require[s] a misrepresentation or concealment of *material* fact."  *Id*. at 22 (emphasis in original).

Thus, the 'element of materiality' is not an <u>independent</u> fourth element of wire fraud, but rather a necessary implication of the 'scheme to defraud' element.  *See Haun v. Barron*, 105 F. App'x 28, 32 (6th Cir. 2004) (stating that "[i]n *Neder*, the Supreme Court held that <u>the phrase 'scheme or artifice to defraud' **included** a materiality element</u>") (emphasis added).  Indeed, the Sixth Circuit, in *Haun v. Barron*, declined to extend *Neder*'s holding to the offense of money laundering under 18 U.S.C. § 1956, "because the [money laundering] statute does not use the term 'scheme or artifice to defraud.'"  *Id*. at 30.

Therefore, the Court finds that, <u>for purposes of the charging instrument</u>, the wire fraud counts do not need to <u>expressly</u> contain an allegation of "materiality," as long as the Superseding Indictment details the 'scheme or artifice to defraud' with sufficient specificity.[9]

---

[9] For purposes of trial, the Court will detail the underlying requirement of materiality, as required of jury instructions.  *See* Pattern Criminal Jury Instruction § 10.02 (6th Cir. Aug. 1, 2016).

Moreover, the Court finds that the allegations contained in the Superseding Indictment <u>do</u> adequately detail the element of materiality. Specifically, "a false statement is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decision-making body to which it was addressed.'" *Neder*, 527 U.S. at 16 (quoting *United States v. Gaudin*, 515 U.S. 506, 509 (1995)).

Here, Counts 3 through 7—which incorporate paragraphs 1 to 46 of the Superseding Indictment—make abundantly clear that the alleged misrepresentations in the advertisements "lured" customers to ITS under false pretenses. (Doc. 82 at ¶¶ 29, 30, 33, 37). Thus, the false promise of the loans 'influenced' the customers to come to ITS, thereby allowing Defendants to obtain the customers' confidential and personal identifying information, which were used to prepare and file tax returns without proper authorization and documentation, ultimately leading to ITS charging and deducting fees from the customers' tax refunds. (*Id.*) It is the collection of the fees, through the fraudulent means alleged, and specifically processing and depositing the customers' refunds, that forms the basis of Counts 3 through 7. (*Id.* at ¶¶ 48-50).

Accordingly, the Superseding Indictment provides adequate detail of materiality in describing the alleged "scheme or artifice to defraud." As the Superseding Indictment sufficiently sets forth the wire fraud offense in Counts 3 through 7, dismissal is not warranted.

### ii. *Specificity*

Defendant further argues that Counts 3 through 7 suffer from the same lack of specificity as Count 2. (Doc. 84 at 32). That is, Defendant alleges that Counts 3 through

7 fail to provide adequate detail regarding the false advertisements. (*Id*.) Additionally, Defendant argues that Counts 3 through 7 provide no explanation as to how the wire transmissions in question were in furtherance of the alleged scheme. (*Id*. at 32-33).

As to the issue of the false advertisements, it is true that the Superseding Indictment does not identify each individual ITS advertisement. Regardless, the Superseding Indictment provides the general time frame during which the advertisements were run (*i.e.*, 2010 and 2011), and further identifies—quite specifically, in fact—the nature of the misrepresentations (*i.e.*, promising loan products that ITS was allegedly in no position to provide).

Additionally, as the Government stated in its response:

> With thousands of such ITS ads in 2010 and 2011, such a requirement [to include each advertisement in the Superseding Indictment] would be impractical if not physically impossible. Defendant simply does not need this information in the Superseding Indictment to adequately prepare a defense to these charges and/or aver acquittal or conviction in some possible future proceeding. In discovery, Defendant was provided with evidence of the advertisements in questions, their running dates, and their content.

(Doc. 85 at 18).

The Court finds that further specificity is neither required in the Superseding Indictment, nor is it a reasonable expectation. Accordingly, the charging instrument is adequately specific as to the advertisements and dismissal is not warranted.

Moreover, as to the relevance of the wire transmissions, Defendant asserts that "[t]here are no allegations regarding the source of the transferred funds or how the wires are connected to the scheme." (Doc. 84 at 33). The Court disagrees.

For wire fraud under 18 U.S.C. § 1343, in order to show that a wire communication was employed for the purpose of executing a scheme or artifice, "the communication must be sufficiently related to the scheme, which is to say that 'the scheme's completion or the prevention of its detection must have depended in some way on the charged [wire communications].'" *United States v. Daniel*, 329 F.3d 480, 489 (6th Cir. 2003) (quoting *United States v. Castile*, 795 F.2d 1273, 1278 (6th Cir. 1986)) (emphasis added).

Here, the wire transmissions under Counts 3 through 7 are described as "Deposit to ICS Account at National Bank of Commerce." (Doc. 82 at ¶ 50). Further, ICS is identified as "a prepaid card servicing company … [used by ITS] to provide debit cards to ITS customers and collect and transmit ITS fees." (*Id*. at ¶ 48). And, as previously stated, Defendants are alleged to have used the false advertisements to lure customers to ITS, in order to electronically file their tax returns and ultimately deduct various fees from the customers' refunds, before placing the balance of the refunds on debit cards for the customers' use. Thus, the "Deposit[s] to ICS Account at National Bank of Commerce," charged in Counts 3 through 7, are related to processing and depositing the customer refunds that ITS allegedly set in motion through the loan product scheme, as advertised.

Accordingly, Counts 3 through 7 are sufficiently specific, and dismissal is denied.

### b.  Counts 25-32

Similar to the argument made as to Counts 3 through 7, Defendant alleges that, as to Counts 25 through 32, the Superseding Indictment: (1) fails to state a wire fraud

offense because it omits allegations as to the element of materiality; and (2) lacks the requisite specificity regarding the wire transmissions. (Doc. 84 at 37-38).

### i. Failure to State a Wire Fraud Offense

As previously discussed, the omission of the express allegations as to materiality is not a deficiency warranting dismissal, as materiality is incorporated in, and can be implied by, the allegations relating to the 'scheme to defraud' element. *See*, *supra*, Section B(2)(a)(i).

Here, the Superseding Indictment specifically states that:

> Beginning in or about January 24, 2012 and continuing until November 6, 2013, Defendants … devised, intended to devise, and aided and abetted other in devising, a scheme and artifice to defraud and to obtain increased income tax return preparation fees from ITS customers **by means of false and fraudulent pretenses, as more particularly described in paragraphs 85 to 121 above**.

> In furtherance of, and for the purpose of executing such scheme and artifice to defraud … Defendants … caused to be transmitted by means of wire communications, as more particularly described below, in interstate commerce, certain writings signs, signals, pictures, and sounds, to wit: income tax refunds for ITS client/taxpayers from which Defendants extracted ITS fees and royalties.

(Doc. 82 at ¶¶ 122-123) (emphasis added). The wire communications referenced are described in Counts 25 through 28 as "Deposits to Tax Tree Account at Bank of America," and in Counts 29 through 32 as "Deposit to Tax Tree Account at Wells Fargo." (*Id*. at ¶ 123).

Additionally, the "false and fraudulent pretenses" are detailed as referenced, including, allegations that Defendants conspired:

to increase the income of ITS, ITS Financial, and TCA Financial and ITS franchisees **by fraudulently inducing taxpayers to use ITS** to prepare and file their federal income tax returns with the IRS, **by falsely representing to these taxpayers** that all applicable IRS rules and regulations regarding the electronic preparation and filing of individual income tax returns were followed by ITS franchisees when in fact, as Defendants then and there well knew and believed, it was ITS's corporate policy to prepare and file federal income tax returns for ITS taxpayer/customers using false and fraudulent documents.

(*Id.* at ¶ 86) (emphasis added). The Superseding Indictment further alleges that Defendants directed ITS franchisees and employees to make false statements to the IRS, which, in turn, induced the IRS to issue the refunds that were deposited, as set forth in the subject wire transmissions. (*Id.* at ¶¶ 85, 87-92, & 98).

Thus, the Superseding Indictment sufficiently sets forth the element of materiality as to the scheme to defraud, by alleging that the scheme was intended to induce customer reliance and to conceal the alleged fraudulent conduct from the IRS. Accordingly, Counts 25 through 32 sufficiently include the elements of a wire fraud offense and dismissal is not warranted.

*ii. Specificity*

Again, Defendant argues that Counts 25 through 32 fail to provide allegations of how the wire communications are connected to the scheme to defraud. (Doc. 84 at 38). However, as the Court previously stated, and as the Superseding Indictment plainly provides, the wire communications were the deposits, to Tax Tree accounts, of the

"income tax refunds for ITS client/taxpayers from which Defendants extracted ITS fees and royalties."  (Doc. 82 at ¶ 123).[10]

The Court finds that the Superseding Indictment sufficiently provides a connection between the deposits and the alleged wire fraud scheme.  Accordingly, the Court denies Defendant's request to dismiss Counts 25 through 32.

### 3.  Dismissal of Count 14

Defendant argues that Count 14, which charges bank fraud, in violation of 18 U.S.C. § 1344, should be dismissed, because the charge is duplicitous.

An indictment is duplicitous if it joins two or more distinct and separate offenses within one count.  *United States v. Boyd*, 640 F.3d 657, 665 (6th Cir. 2011) (citing *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002)).  Offenses are distinct and separate if they each require proof of a fact that the other does not.  *Davis*, 306 F.3d at 416.

A duplicitous indictment raises three primary concerns with regard to a defendant's Fifth and Sixth Amendment rights: (1) the indictment may fail to provide the defendant with proper notice of the charges against him; (2) duplicity compromises the unanimity of a verdict, as jurors may find the defendant guilty of one count without reaching a unanimous decision as to the particular offense committed; and (3) uncertainty as to the charges may impede a defendant's ability to plead an acquittal or conviction in bar of future prosecutions for the same offense.  *United States v. Kakos*, 483 F.3d 441, 443-44 (6th Cir. 2007).  However, duplicity is not necessarily fatal to an indictment and, in fact, can be remedied if the defendant moves "to force the government to elect the

---

[10] Counts 25 through 32 further include the date and amount of each deposit.  (Doc. 82 at ¶ 123).

charge within the count upon which it will rely, or he can ask the court to particularize the distinct offenses contained within a count." *Id*. at 444 (citing *United States v. Shumpert Hood*, 210 F.3d 660, 663 (6th Cir. 2000)).

Here, Count 14 of the Superseding Indictment alleges that on or about January 10, 2007, Defendant devised a scheme and artifice to defraud HSBC Bank, an FDIC insured financial institution. (Doc. 82 at ¶¶ 55-57). Specifically, it is alleged that Defendant "instructed an ITS employee to re-print 26 HSBC bank checks, originally issued to ITS customers as Refund Anticipation Loans secured by those customers' expected federal income tax refund, and forge those customers' signatures on the back of the HSBC bank checks." (*Id*. at ¶ 56). It is further alleged that Defendant, upon obtaining the forged checks (totaling $32,000), gave them to his Chief Financial Officer, who, at Defendant's instruction, deposited the checks into the ITS Financial operating account. (*Id*. at ¶ 57). As a result, the fraudulently obtained funds were subsequently used to pay ITS Financial's outstanding obligations. (*Id*.)

Defendant argues that he has been charged with only one count of bank fraud, but that the charge is based upon his alleged forgery of 26 separate checks. (Doc. 84 at 33). Thus, Defendant asserts that each of the 26 transactions should be charged as a separate offense. (*Id*.) Defendant alleges that if he were convicted of Count 14, "there would be no way to know whether the jury found that he forged one, some, or all of the 26 checks." (*Id*. at 33-34).

However, Count 14 is not duplicitous, because it charges only one bank fraud offense. (Doc. 82 at ¶¶ 54-57). To prove bank fraud, "the government must demonstrate

three elements: '(1) that the defendant knowingly executed or attempted to execute <u>a</u> <u>scheme to defraud a financial institution</u>; (2) that the defendant did so with the <u>intent to</u> <u>defraud</u>; and (3) that the financial institution was insured by the FDIC.'" *United States v.* *Warshak*, 631 F.3d 266, 312 (6th Cir. 2010) (quoting *United States v. Everett*, 270 F.3d 986, 989 (6th Cir. 2001)) (emphasis added). Therefore, the existence of a "scheme to defraud," and adequate *mens rea*, are essential element to the bank fraud charge, and the Government is required to include allegations regarding the scheme, and criminal intent, in the Superseding Indictment. *See* Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged").

Contrary to the Defendant's assertion, Count 14's reference to the 26 checks does not result in 26 instances of fraud joining the substantive count. *See United States v.* *Robinson*, 651 F.2d 1188, 1194-95 (6th Cir. 1981) (finding substantive mail and wire fraud counts were not duplicitous for incorporating allegations of the conspiracy). Instead, describing the conduct involving the instruction to forge, and then deposit the 26 checks, is merely part of the explanation of the general "scheme" and intent underlying the one bank fraud count. Indeed, the Superseding Indictment treats the deposit of the 26 checks as one transaction, and makes clear that all 26 checks were part of the same course of conduct to defraud one financial institution (*i.e.*, HSBC Bank), one time (*i.e.*, on or about January 10, 2007). *See Robinson*, 651 F.2d at 1194-95 ("To avoid unnecessarily complex and confusing allegations and the concomitant prejudice to [the defendant] of charging him with scores of substantive counts arising out of the same

scheme, the indictment particularized in one count the different acts that were part of the single scheme").

Further, "[a]ssuming arguendo, that the indictment [i]s duplicitous … dismissal of the indictment is not the proper remedy." *Robinson*, 651 F.2d at 1195. The Court can clarify the issue in the jury instructions, and can further ensure unanimity of a verdict by way of a special verdict form. *See id.*; *Shumpert Hood*, 210 F.3d at 663.

Thus, the reference to the 26 checks does not render the Superseding Indictment duplicitous. Moreover, the Court can remedy any confusion resulting from the charging language by specific jury instructions and a special verdict form. Therefore, dismissal of Count 14 is not appropriate.

### 4. Dismissal of Count 24

Finally, Defendant argues that the Court should dismiss Count 24 as untimely under the applicable statute of limitations. (Doc. 84 at 35-37). Count 24 charges Defendant with conspiracy to defraud and commit wire fraud, all in violation of 18 U.S.C. § 371. (Doc. 82 at ¶ 83-120).

"The statute of limitations period for a violation of Section 371 'is five years, which period runs from the date of the commission of the last overt act in furtherance of the conspiracy.'" *United States v. Fraser*, 63 F. App'x 814, 817 (6th Cir. 2003) (quoting *Craft*, 105 F.3d at 1127); *see also* 18 U.S.C. § 3282(a) ("no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed").

Here, the Superseding Indictment was returned on January 24, 2017.  (Doc. 82).

Accordingly, for the conspiracy charge under Count 24 to have been brought within the

limitation period, the Government must allege that at least one overt act occurred after

January 24, 2012 (*i.e.*, five years prior to the date of the Superseding Indictment).

Count 24 alleges that the conspiracy began in or about January 1, 2004, and

continued up to and including <u>November 6, 2013</u>.  (Doc. 82 at ¶ 84).  Specifically, Count

24 includes the following overt acts, which allegedly occured within the statute of

limitations period:

> From in or about January of 2012 to in or about March of
> 2012, Defendants OGBAZION and WADE and other persons
> whose identities are known to the Grand Jury, provided a
> "backup" EFIN to an ITS Franchise operating in Rochester,
> New York and permitted that location to file over 440 returns
> with the IRS using a EFIN that was not properly registered
> with the IRS.

> From on or about January 3, 2013 to on or about February 28,
> 2013, Defendant OGBAZION and other persons whose
> identities are known to the Grand Jury, caused over 39% of
> the tax returns electronically filed with the IRS by ITS
> franchises to be filed without the signed consent of an ITS
> customer in order to lock customers into using an ITS return
> preparer.

(*Id.* at ¶¶ 119, 120).[11]

However, Defendant argues that the overt acts alleged in paragraphs 119 and 120

"are a completely disingenuous attempt by the government to defeat the statute of

limitations."  (Doc. 84 at 35).  Defendant alleges that the "two isolated incidents are not,

---

[11] Additionally, Count 24 includes another seven paragraphs alleging overt acts that continued
"until in or about 2012."  (Doc. 82 at ¶¶ 103, 107, 108, 111, 116, 117, 118).

and could not be, part of the scheme alleged in Count 24, or any scheme for that matter."

(*Id.*)  Specifically, Defendant contends:

> The chronology of the civil investigation and proceeding shows that any alleged conspiracy would have effectively ended as of November 2011, when [Defendant] became aware that he and ITS were under investigation.  [Defendant] received the first document request from the IRS in the civil investigation on November 4, 2011. ... He was interviewed first on December 7, 2011 (and asked questions about the use of EFINs and the transmission of tax returns to the IRS without customer authorization).   … He was interviewed again on February 23, 2012 (and again asked questions about the use of EFINs and the transmission of tax returns to the IRS without customer authorization). …
>
> Simply put, the alleged jig was up before the alleged incidents in Paragraphs 119 and 120 took place.  If these events did indeed occur, they were isolated incidents, completely divorced from events that occurred prior to the investigation.

(*Id.* at 35-36).

As an initial matter, in his first motion to dismiss, Defendant argued that he engaged in the civil interviews and depositions without any inclination that he may become the target of a criminal investigation or prosecution.  (Doc. 45 at 7-27).[12] Assuming this to be true, Defendant may *not* have known that 'the jig was up' to the extent that he would have abandoned the conspiracy.  Regardless, the Court is not

---

[12] Notably, however, the Court stated in its Order:

> Defendant's assertion that he had "no reason to believe" he might be, or may become, the target of a criminal investigation strains credibility.  Moreover, the fact that Defendant had counsel present during each of his communications with the Government renders it all the more unlikely that he was as oblivious to his potential criminal exposure as he now claims.

(Doc. 66 at 11).

persuaded that the alleged conspiracy necessarily <u>had to end</u> as soon as "the alleged jig was up." While the argument is logical, it is more appropriately saved for the jury, rather than offered as grounds for dismissal.

Moreover, the Court cannot conclude that the overt acts in paragraphs 119 and 120 must, at best, be isolated incidents. *See United States v. Fraser*, 63 F. App'x 814, 818 (6th Cir. 2003) ("Proof of an overt act taken in furtherance of the conspiracy within the statute of limitations period would clearly demonstrate the continued existence of the conspiracy. However, once a conspiracy has been established, it is presumed to continue until there is an affirmative showing that it has been abandoned") (internal quotation marks and citations omitted). Whether Defendant's knowledge of the ongoing investigations constituted abandonment of the alleged conspiracy is not properly before the Court.

In short, Count 24 sufficiently alleges overt acts occurring within the limitation period applicable to an offense under 18 U.S.C. § 371. Accordingly, dismissal is not warranted.

## IV.  CONCLUSION

Based upon the foregoing, Defendant's motion to dismiss (Doc. 84) is **DENIED**.

**IT IS SO ORDERED.**

Date:  April 10, 2017

Timothy S. Black
United States District Judge